Good morning, Your Honors. My name is Heidi Lynn Lambros from the Office of the State Appellate Defender, representing Defendant Appellant Darius Bailey. At 6.45 p.m. on Thursday, December 4, 2008, after an almost week-long murder trial, Darius Bailey's jury informed the trial court that it had reached a unanimous verdict. The jury returned to the courtroom and the verdicts of Guilty on Murder, Home Invasion, and Robbery were read by the trial court. Defense counsel then specifically requested that the jury be polled, and jurors No. 1, 2, and 3 all assented and agreed that this was their verdict. But juror No. 4, Jury Gibson, renounced his verdict, a rare occurrence in Cook County, Illinois law, and stated unequivocally that the verdicts were not his. Instead of polling the remaining eight jurors, as defense counsel had requested, the trial court said, all right, jurors go into the back room. Please return to the jury room. The jury was dispatched to the jury room with no instructions at that point of whether or not they were discharged or whether they were required to keep deliberating and act as the formal jury. The court, in front of defense counsel, in front of the state, said, well, they're obviously not done deliberating. I'm going to give them fresh verdict forms, ostensibly by the sheriff, came out an hour later and rendered their verdict of guilty unanimously and were polled unanimously on murder. Was there any objection by defense counsel to the procedure used by the trial court? No. Defense counsel, the first time around, said no objection. And then when the jury returned for the second verdict, said, well, judge, because of the unusual polling procedures, I request a mistrial, which was denied by the trial court. What about a post-trial? Was there any objection raised in your post-trial? He raised that the trial court erred in failing to grant his motion for mistrial and erred about, not specifically about the polling procedures, but about the But not specifically about the polling. Right. About the procedures. About how this unusual circumstance, which, again, rarely happens. Did your notion of the evidence in this case was closely balanced? I did make an argument that the evidence was closely balanced, considering that we have Mr. Bailey's confession versus, you know, the evidence that Mr. Bailey testified to, that he knew this victim and that he was in We have a little more than his confession. We have his fingerprints. He tried to hide the keys from the car. And the only thing we have is the story that he told that somehow the victim let him use the car. He used to go in the victim's household. Well, what we also have, again, we argued that the evidence was closely balanced on that crime. But again, this is certainly a substantial right. You have a substantial right to a verdict that's free of coercion, free of error. Where's the coercion? Well, we don't know where the coercion happened. What we know is that if you don't know where the coercion happened, you have no issue. No. If you find it out later, you might have a post-judgment motion. But if you have no evidence of coercion, you have no issue. What we have is people, Lee Chandler and Bianca B. McHale. McHale specifically said, evidence of coercion is not necessary. It's the possibility, the conceivable nature of the coercion. When this dissenting juror goes back into the room and was isolated effectively by the trial court's actions, polling was requested. There's no case in Illinois that says, arbitrary, I'm going to stop the polling. All 12 should have been polled to make sure that juror number 4, when he goes back, doesn't feel pressured either by the trial court saying, okay, just go in the back room. Or by, I mean, obviously these jurors have been deliberating together. They thought they had a unanimous verdict. They're going to come back to the polling room. They don't know what's going on at this point. The judge hasn't said, please, you know, don't talk amongst each other. We're going to figure this out. So, I'm sure that there was some, a little bit of animosity towards juror Gibson. What are you doing? What's going on? And we don't know what happened. What we do know is an hour later, and if there's prejudice, it's that a verdict was rendered on guilty. And you know, what Bianchi and Chandler say is the judge is required to poll all 12 to make sure that that juror is not isolated. Well, counsel, could not the effect of polling all 12 have just as easily indicated a coercion? I think that it could. I mean, I think that what we know from the only two cases in Illinois law that are on point around this case, that when you're juror number four and you don't hear from the other eight, you absolutely are isolated as the only one. And it might have been a very different story, the procedures that would have happened had the judge continued to poll the other eight and five more had said, you know what, I dissent too. The judge at that point might have just said, I'm not going to even bother with re-deliberation. This jury, I'm going to send it out for a mistrial, which he could have. But if you know all 12, at least juror Gibson, I have no idea why he dissented. I had no idea what was going on in his mind. We don't know that. But what he did know is that he was sole and he was alone. And that his dissent was the reason that caused all of them to have to go back to the jury room and have to do this all over again. So had the trial court done what the trial court was required to do and just simply polled all 12 jurors, this would be a, juror Gibson might not have felt the coercion and the isolation that he may have felt. And again, it's a conceivable coercion. Counsel, if you, there was no objection at the time of the lack of the complete polling and that there was, this issue was not raised at the time of your post-trial motion. Why haven't you forfeited this issue? I don't believe that the technical forfeiture, again, I believe that the mistrial, the trial court, you know, coming up late, and again, this is very unusual and strange, making a motion for mistrial would have allowed the trial court to correct the error that had happened. The jury hadn't come back at that point. He could have corrected the error and declared a mistrial. But regardless of that, this is certainly a serious error under the Second Prong of Plain Error, where a defendant has denied his right to an impartial and coercion-free jury. So I'm not conceding that the error is forfeited, but if this court does find that it's forfeited, this is certainly, this isn't a substantial right to have a coercion-free and a unanimous impartial jury, then there doesn't exist a substantial right. So we're only guessing it was coercion? Speculating about the coercion, which has been permitted by other courts that have rendered on this issue. Did they decide that on a plain error analysis? No, but they decided that when the trial, when the court asked them, when they were asked to decide about possible prejudice, that they don't need to show any possible prejudice, that it's just a possibility that this juror would have felt isolated and coerced. It might have been different if he made an objection and raised a post-trial motion. I think it would have been very different, especially for the purposes of this argument, if he had raised the objection. And that should have been proper. But the trial court was in charge of this jury. It's the trial court's responsibility to take care of its jurors. He's in control of them. And above all else, I mean, these jurors don't even, you know, eat lunch without the judge's permission. They don't do anything without the judge's permission. At the bare minimum, excusing what defense counsel did or didn't do, the trial court was in charge of this jury and should have made some type of notation to make sure that the coercion didn't happen in this case. And because we don't know that, Mr. Bailey is entitled to a new trial based on this issue. There's no questions on argument one. I'd like to turn to argument two. Now, the second error that the trial court committed in this case was Mr. Bailey, following, again, before verdicts, before instructions, requested, specifically requested, that his jury be instructed on felony murder and on intentional knowing murder. He requested separate verdict forms, and he requested that the jury, as his defense, deliberate and come back with a verdict on guilty on felony murder or guilty on knowing intentional murder only. That request was denied by the trial court. But didn't the court apply the correct remedy by convicting the defendant of felony murder? Well, the state has, because of the form, De Minimis says, felony murder, B3. What we do know is that there's also on there home invasion conviction, which he entered, and he entered sentence on, which the state concedes the home invasion sentence must be vacated pursuant to People v. Smith. And he also entered judgment on robbery. And that's formalistic, because what the trial court did in this case is he found Mr. Bailey guilty, found Mr. Bailey, beyond a reasonable doubt, eligible for the death penalty based on the aggravating factor of intentional and knowing murder in the course of a felony. And if Mr. Bailey's verdict was solely felony murder, the less culpable state, the lowest mens rea, he could not have been found to have committed intentional and knowing murder at the eligibility phase. What the trial court here clearly did, took judicial notice of the general verdict, and because of that, taking judicial notice, found that Mr. Bailey was eligible for the death penalty only because of the aggravating factor of intentional and knowing murder in the course of a felony. Now, what Smith tells us is when a request is made, when a request is made by defense counsel specifically asking for different verdict forms, and it's denied, Smith says that by operation, what happens now is we must treat that verdict as a verdict on felony murder only, which means it's a not-guilty verdict on intentional and knowing murder. Because we have no knowing and intentional verdict here, Mr. Bailey could not have been eligible for the death penalty or even gone to an eligibility hearing based on that aggravating factor. And? And because of that, Mr. Bailey's felony murder verdict must be treated as such, and the sentencing range is now between 20 and 60 years. He could not have been eligible for the death penalty, therefore he could not have been eligible for his natural life sentence, therefore he requests resentencing to attorney. The state says he's eligible for natural life in any case. He's not eligible for natural life in any case. The state specifically only sought the aggravating factor at the eligibility hearing of in the course of a felony and knowing and intentional murder. The judge took judicial notice of the verdicts, which were the general verdict form, which we know now is improper because Mr. Bailey did not get the instructions he requested, robbery and home invasion. There was no mention of any other aggravating factor. And the court found, I'm finding the aggravating factor of felonious murder, and found Mr. Bailey eligible for the death penalty. The state can't go backwards now and say, oh, we should have offered another aggravating factor. They just didn't. They simply didn't. Mr. Bailey suffered no injury by having that hearing. Your whole argument has to surround the question of whether he was eligible for a natural life sentence based on a conviction for felony murder. That's it. What is the argument that he wasn't eligible? He was not eligible. It's outside the range? Yes. The state says it isn't. It absolutely was. The only way that he was eligible for his natural life sentence was based on his death penalty eligibility. The state still has to prove aggravating factors. The state turns around in their brief and says that's just wrong. What's your response to the state's argument on that issue? They said it's absolutely wrong. It's absolutely wrong that Mr. Bailey was eligible for a natural life sentence even in the absence of death penalty eligibility. He was not. There was no finding here of brutal and heinous conduct. It wasn't charged. It wasn't argued at aggravating factors.  And it was not found by the trial court. What are the aggravating factors that would allow a natural life sentence in the absence of death penalty eligibility? Brutal and heinous behavior. Brutal and heinous conduct. A murder of a person under the age of 12, murder of a police officer, the factors that are separate from the natural life sentence, which were not sought in this case. The trial court found him eligible for the death penalty based on intentional knowing murder in the course of a felony. And after that eligibility- The trial court found that the aggravating factors existed beyond reasonable doubt. Yes, he found that he said the word factors, but the state only proceeded on the one factor. The state asked the court to take judicial notice of the verdicts. And nowhere in the verdict is any other aggravating factor but the felony murder aggravating factor. So now what we have here is the trial court only making a finding on murder in the course of intentional or knowing felony. No other aggravating factor was presented by the state, although they noticed it up. They didn't prove it beyond a reasonable doubt, nor did they even try to at eligibility hearing. And this might be a different case if we had different facts. But the truth is the state didn't see that factor. And can't now ask this court to sue Esponte under de novo review, kind of comb the record for another factor. What we have here is a verdict, as Smith tells us, very cleanly of felony murder. There is no intentional mental state attached to this verdict. Because there is no intentional mental state attached to this verdict, Mr. Bailey cannot be eligible for the death penalty. We can't do a harmless error analysis, as Smith clearly tells us, on that aggravating factor. This is cleanly Smith. And the state tries to, you know, talking about general verdict forms and appending one account, there's nothing to do with this case. This case is Smith from beginning to end. He requested verdict forms. They were denied him. He was denied to have the jury make a formal finding that he was not guilty of intentional unknowing murder. Because of that error and the gravity of that error and that due process violation, Smith tells us that now we must treat that as felony murder only, which lacks any mental state. Because of that, Mr. Bailey is entitled to what he asked for and could have gotten the benefit, the lowered sentencing consequences, which the Smith court even talks about. Here's a lower sentencing consequence that could stem from felony murder versus knowing and intentional. Someone would not be eligible for the death penalty based on this aggravating factor. And what the state's, I think, crucial in the state's argument, although they concede, I think this is very telling, that under Smith, the home invasion conviction and sentence must be vacated because there was an error done. They concede that Smith will, you know, applies that he should have gotten the instructions and didn't get them. For some reason, they're making this argument that simply because it's a death penalty case that Smith doesn't apply. What is the significance of the court's making the determination that he was eligible for the death penalty? The court did make the finding based on the general verdict. And what we know now is that general verdict, well normally in death penalty cases, we have a general verdict. And a court is allowed to presume the higher mental state. And in all the cases cited by the state, you have a general verdict,  And then the court finds based on that verdict, the higher knowing intentional mental state. But we can't treat that. Smith tells us that presumption no longer exists because he was denied the right to present the felony murder. That presumption of a knowing and intentional no longer operates to exist. This verdict is only felony murder. And as we know, had this jury rendered and acquitted him of knowing and intentional murder, the state couldn't have sought death penalty eligibility. You would find not guilty of the higher mental state. And that's what Smith tells us. And what the state is essentially asking you to do is carve out an exception that Smith didn't carve out. Presume that Smith would have lowered the standards of due process for a death penalty defendant. And basically hold that the import of a felony murder verdict is nothing. And that's just simply not true. And what are you asking us to do in terms of the home invasion and robbery? I agree with the state. At the home invasion, because of Smith, needs to be vacated. Because this is a felony murder verdict. Mr. Bailey should go back for re-sentencing. He's not contesting the actual finding of guilt. This is not contesting the murder conviction, but just that he was not found guilty of the higher mental state. And you're asking us to reduce robbery one to robbery two? Yes, the state concedes that issue, too. Which would be the robbery count would stand, and then re-sentencing on. And then re-sentencing for the- Between 20 and 60 years for Mr. Bailey. Which he would have been entitled to had the jury rendered this felony murder. Re-sentencing for, you dropped the- I'm sorry, felony murder, on the felony murder count. Counsel, thank you, we'll give you some time on rebuttal. State? Good morning, your honors. Assistant State's Attorney, Douglas Harbath, H-A-R-V-A-T-H, on behalf of the people of the state of Illinois. Regarding the first issue, the polling issue, the defendant has indeed forfeited the polling claim, and it's not reviewable for plain error, because no error occurred. In this case, the trial court properly identified juror dissent, and he facilitated continued jury deliberation by sending the jury back to the jury room, and furnishing blank verdict for him. He didn't say anything to them, he just, I mean, there were no instructions. He just said, go back to the room. He didn't tell them that, you know, the trial's over, continue deliberating. You can talk among yourselves freely about what, you know, what your feelings about the case or the witnesses are. There were no instructions at all. And I guess that points to the problem with procedural default. So why wasn't that error? Well, it wasn't error because the judge, first of all, the judge is not required to continue polling. There's no requirement. Illinois Supreme Court has never said that continued polling is required. And the defendant concedes this in the reply brief, that it merely suggests that every jury should be polled. I think, to answer your question, this points to the problem of procedural default. Where if this had been an issue, if the defendant had raised this in the trial court, that the defense attorney could have asked the judge, judge I'd ask you to, just so there's no confusion, that they be re-instructed that they're to continue to deliberate. The judge didn't do that because the judge didn't have to. It was clear. I mean, why else send the jury back to the room where they had just deliberated? And why furnish blank verdict forms, if only to re-deliberate, to continue deliberating? The jury was acutely aware that its verdicts were no longer unanimous. They all sat there when the fourth juror dissented from the verdict. It just kind of estranged credulity to think that they were back there twiddling their thumbs when the record actually shows that they were back there for another one hour and 42 minutes. And that they actually signed those verdict forms that were furnished to them. The Supreme Court and this very court have consistently held that plain air analysis is not appropriate in this situation. I think to suggest that the evidence in this case was anything short of overwhelming is, I don't think that can be argued with a straight face. The evidence in this case was beyond overwhelming. It was a confession to the murder. His fingerprints were on the wallet. He had the keys to the victim's house and the victim's car. And the Supreme Court has said that this is not structural error. So the second prong of plain air does not apply. And I would like to correct one misstatement that the defense attorney requested continued polling. That never happened. There was no objection at the time of the polling. The defense attorney never asked, Judge, I guess. But never, never asked. I'd ask you, would you guys like me to wait for that? Wait till it comes off. May I have your attention, please? May I have your attention, please? This is an emergency floor-by-floor evacuation drill for occupants of the 14th, 13th, and 12th floors. This is only a drill. Now, go ahead. Thank you. There was never a request for continued polling. And then the only objection that was made was. May I have your attention, please? All occupants of the 14th, 13th, and 12th floor, proceed to the nearest emergency stairwell.    And re-enter another 7th floor. All occupants of the 14th, 13th, and 12th, proceed to the nearest emergency stairwell. And re-enter another 7th floor. Persons requiring assistance, stay to the next elevator or vestibule. All occupants once out of the 7th floor, proceed to the next elevator and return to your floor. This is only a drill. Okay, now that we've all returned to our floor, go ahead with your arguments. Thank you. Cut this out. I'm just going to shout out my notes. I'm going to shut up now. I don't want people to hear this nonsense. Hopefully that's the end of it. Try again. Thank you. Defense counsel moved for a missed trial, but only on the basis of the mere fact that there was a dissent. Never identified lack of continued polling as any sort of problem with the whole procedure. Assuming this court does reach the issue, there's no per se requirement of continued polling. And I think to sort of punctuate the absurdity of the defendant's argument is that he is treating the lack of continued polling on par with an absolute refusal to poll the jury to begin with, which has been held to be a reversible error. This doesn't even closely resemble an absolute refusal to poll the jury, and it certainly doesn't command the same result. Even if there was any sort of impropriety with the polling procedures, it was cured when the jury was actually sent back. What about the McHale case, where the court found it was error for the judge to stop the jury poll and direct the jury to continued deliberation? Yes. After that first jury I had to send it. Yes, Your Honor. I'd like to first point out that the issue was thoroughly preserved in Bianchi. The plaintiff in that case repeatedly objected and moved for a missed trial at least one time on the very issue of polling. In that case, it was the first juror that twice dissented and wrote protest next to her signature on the verdict form. So not only did you have failure to, you had isolation because she was the first one, you actually have evidence that she was coerced. She was saying that she signed her name on there out of protest. In McHale, this court cited the initial opinion in Chandler, which said that the court has a duty to continue polling. I think that's the same error that the defendant has made by failing to cite the supplemental opinion in Chandler, which recognized that there is no duty to continue polling. There's no absolute requirement of continued polling under the Supreme Court's decision in Kellogg, but that it should be done. At most it says that it should be done, but in those cases that the defendant relies on, they're totally inapplicable to this case because they involve actual coercion and evidence that what the judge did actually prevented the dissenters from actually expressing their dissent, which is what the holding of Kellogg is. The trial court must, one, afford an opportunity for free expression of dissent and to determine what their present intent is and then either discharge the jury or have them continue to deliberate. I think this court pointed to one of the main problems in this case is the defendant can't show any form of prejudice without relying on speculation. In the Chandler case itself, it said the mere possibility of harm to the defendant is insufficient to find that the polling was improper. I think the mere possibility is exactly what the defendant is relying on in this situation. Turning to the second issue regarding the special verdict forms, the defendant's claim is moot. He was only sentenced for felony murder and not intentional or annoying murder, and the trial court's death penalty eligibility determination was not based on a presumption that the jury convicted the defendant of intentional or annoying murder because a conviction for intentional or annoying murder is not a prerequisite to eligibility for the death penalty predicated on felony murder. To sort of exemplify that, the defendant's entire claim is based on a faulty premise, and that is this. His faulty premise is since the state had to prove intentional or annoying mental state at the death penalty eligibility hearing, the state was required to first obtain a conviction for intentional or annoying murder at the culpability trial, and that just simply isn't the case. It's a separate hearing entirely. A defendant is eligible for the death penalty based on any conviction for murder, be it A1, intentional murder, A2, annoying, strong probability murder, or felony murder. It's the mere fact of the murder conviction, any murder conviction, is simply the jurisdictional step to get to the eligibility determination, which is an entirely new, beyond a reasonable doubt hearing that's conducted by the trier of fact, and in this case it's the judge. And in this case, knowing that the judge himself would be the trier of fact at the separate hearing, and that's what it's actually called in the statute, it's a separate proceeding. Understanding that he would be the trier of fact, he recognized that there would be no sentencing consequences. And I would also like to correct opposing counsel, the state does not concede that separate verdict forms were required in this case. They were not. Because the trial court recognized that any sentencing consequences that would normally attach did not attach in this case because the trial judge was going to be the trier of fact at the sentencing hearing. To sort of exemplify this, the defendant would be eligible, if he was convicted for felony murder only, he would still be eligible for the death penalty if the trier of fact finds the factors proven beyond a reasonable doubt. And that's exactly what happened here. The cases that the state cites, we refer to the collateral estoppel cases and the implied acquittal cases, those sort of point to the faulty premise of the defendant's argument. There would be no implied acquittal. If the jury just signed a separate verdict form as to felony murder, that would not operate as a finding of not guilty on intentional murder or knowing murder. So getting back to the mootness argument, since the result will not change, and yes the state does concede that the predicate felony must be vacated, that doesn't change the fact that he is and remains eligible for a life sentence. So in that sense he already has the remedy of the Smith decision. Just sort of to give another example of the defendant's logic, based on the defendant's logic, any time a defendant opted for a trial court to conduct his death eligibility hearing, the state must still submit those aggravating factors to the jury at the culpability trial, sort of a premie, and the state did cite, asked for leave to cite it at Adkins, to make this point. I still don't see why you say there was no error. When Smith says where specific findings by the jury with regard to the offense's charge could result in different sentencing consequences favorable to the defendant, specific verdict forms must be provided upon request, and the failure to provide them is an abuse of discretion. I don't see why this was not an abuse of discretion. It was not an abuse of discretion, and it was not error because there were to be no sentencing consequences that would attach to the giving of those separate verdict forms, for the simple reason that the defendant would remain eligible for, for the death penalty based on any conviction for murder under A1, A2, or A3, and as the sentencing body. Who was the trier of fact in the death eligibility phase in Smith? Well, the. Trial court or judge? You know, it's not actually, Smith had been a death penalty case at one point. That's not, as I recall, is not indicated in the opinion. The. The. The thing, the issue in Smith, in the narrow holding in Smith, which I believe it's Davis says that Smith is very narrow. Smith applies to situations where there are, where there are, there will be sentencing consequences that attach, and that in those situations the defendant is entitled to have the jury giving separate instruction, or verdict forms for felony murder. And those sentencing consequences are quite obvious in that case, were that if the defendant were only found guilty of felony murder, he couldn't be given a separate sentence and conviction, conviction and sentence for the predicate felonies. That's a very obvious sentencing consequence. In this case, the judge, as a sentencing body, and the sole trier of fact at the eligibility hearing, was not bound by any factual determinations that arose out of the jury's verdicts. And I think that really points to the problem with the defense argument, in sort of assuming that a conviction for A1 or A2, intentional or strong probability murder, was a prerequisite to eligibility for felony murder. At the death eligibility hearing, simply because the requirement at that hearing is, has a knowing and intentional requirement. But the death eligibility hearing is beyond reasonable without hearing. It's a whole, it's a new hearing altogether, where new factual and legal determinations are made. And even if the defendant had only been convicted of felony murder, and there was no sort of prior finding of intentional or knowing, this friendly problem with their argument, that would not foreclose the trial judge from making that determination on his own, at the eligibility hearing. In fact, based on the defendant's argument, the state could never get the death penalty predicated on felony murder, if the state only charged felony murder, because the state could never prove the intent or the knowledge required. That's just not true. With regard to what aggravating factors the state did allege, they were two factors. It's right in the common law record. Our notice of intent to seek the death penalty listed two of them. Felony murder and the aggravating factor based on the victim's age, and that the offense was exceptionally or brutally heinous, indicative of wanton cruelty. There were two. And I think to suggest that the record indicates otherwise is just flat wrong. There were two factors. And to bolster that, when the judge did make the finding, and I'd like to emphasize that's the only thing the judge has to do at a death eligibility hearing, is find two things. Take judicial notice of the evidence in the verdict, which he did in this case, and make the finding that the aggravating factor or factors have been proven beyond a reasonable doubt, and that's precisely what the judge did in this case. And he found the word factors, and he used it in the plural. Factors with an S. The trial court finds the statutory aggravating factors proved beyond a reasonable doubt, and that the murder was committed during the course of the underlying felonies. And under Shatner and Johnson and several other Supreme Court cases, it's clear that the judge needs not make any additional detailed findings beyond that simple finding. And I think, again, to punctuate the problem with the defendant's argument, that the defendant essentially implies that these aggravating factors have to be submitted to the trier of factor culpability before they can be reached at eligibility, and it's just not true. That's the Apprendi has no application, and that's what the Adkins case says. Apprendi has no application to a death eligibility hearing. Simple as that. It's a brand-new beyond a reasonable doubt hearing. A jury would never be given instructions or verdict forms on the death eligibility factors at trial culpability hearing because it's not relevant. In fact, the Supreme Court says it's error to do that. It's reversible error because you're combining sort of having a statutory I'm sorry, a summary finding of eligibility, and you're combining guilt and eligibility, which the Supreme Court has said is absolutely improper. So for all those reasons, and for those stated in the State's brief, we'd ask that this Court find that the life sentence was proper, the issue is moot. There's no reason to send this back because the defendant is eligible for a life sentence and he remains eligible for a life sentence. He was at the time, so nothing can possibly change. He had the discretion. In fact, the defendant, I believe, concedes in the reply brief that the judge had the discretion to sentence the defendant to natural life or a term of years, and there's nothing in the record that suggests that the judge was under this misapprehension that a life sentence was mandatory. So for those reasons, we'd ask that you affirm the defendant's life sentence in this case. Counsel, thank you. Rebecca? Yes, just a few points regarding the second issue. In order for there to be a sentence, there has to be a constitutionally permissible verdict. Although there's two different hearings for judgment and verdict from the jury and the death penalty, it presumes a constitutionally permissible verdict, which we don't have here. We do not have a general verdict. All we have pursuant to Smith is a verdict on felony murder, which is a not guilty. As much as the state doesn't like that, if this jury had been instructed as it should have been instructed, the jury would have found either guilty felony murder or guilty knowing and intentional. And the instruction forms are very clear in the subset. It's also not guilty felony murder, not guilty knowing and intentional murder. What's the sentencing range for guilty felony murder over age 60 plus proven anus? That would be also a death penalty eligibility factor. Had the state proved it, and they didn't. They didn't prove he was over 60? No, they didn't. The age of the victim was never introduced to trial? The age of the victim by the neighbor, I think he's around 80, but the age of the victim was never proved beyond a reasonable doubt. And in fact, the state probably knowing. Whether it was proven beyond a reasonable doubt or not was up to the trial judge. And if someone said he's 80, and the trial judge thinks that's enough, maybe that's enough. Is the individual capable of testifying as to the age of another? If you know the age of the other and you can prove that you actually know the age of the other, I could speculate about someone ages here, but that's not going to mean that it's proved beyond a reasonable doubt. You don't think that there's enough evidence where someone could find beyond a reasonable doubt that the death of the victim was brutal and heinous? I don't. And I also think that the judge, the jury, the state was required to prove this beyond a reasonable doubt. And the reality is, although they noticed up, they could have noticed up 200 factors or however many factors. It doesn't mean that just because you notice it, it's automatically proven. Oh, I understand that. But who was the trier effect on whether it was brutal and heinous? The trier effect on the brutal and heinous finding would have been the judge, had he been asked to determine that aggravating factor, which he wasn't and which he never said. He did say, this is the felony murder factor. And the state also didn't say, judge, you know, just take judicial notice of the verdicts. And what we know are contained in the verdicts only supports the finding of aggravating factor, intentional knowing murder, stemming from the commission of a felony. Why do you use the word factors, plural? I don't know. I don't know if it's a Scribner's error. I don't know if he was just speaking. I don't know how judges talk. What I do know is he followed that up with felony murder. What he didn't follow that up with is brutal and heinous behavior in age 60. That's what he didn't do. This is a death penalty eligibility hearing. I should certainly hope the trial court is going to be careful in making, I'm finding this factor and I'm finding this factor. And it just didn't happen. The state could have offered evidence and they didn't. And they could have found it, but he didn't. We're solely left with intentional knowing murder based on the commission of a felony, which Smith tells us is no longer appropriate. And, again, in order for there to be a sentence, and I agree that they're two-pronged, but this is essentially what the state's asking this court to find is if the state notices up, you know, first-degree murder and the jury finds you guilty of second-degree murder, they're allowed to go to a death penalty eligibility and say, no, we want the first degree. They can't do that. This verdict operates as a not guilty unintentional knowing murder. So are you overlooking the fact that in this case it was the trial court and not the jury that was the finder of fact in determining the defendant's eligibility for the death penalty? Well, I think two things happened. One, it was a jury verdict, and eligibility stems from the verdict. A reduced mental state verdict would not allow, would not allow, any trial or fact, a judge or a jury to find this defendant guilty of intentional knowing murder. And, second, in Smith, it was the judge who determined the sentence. And Smith had this before it in finding that the judge in Smith specifically made a finding, this murder is knowing and intentional. And the Illinois Supreme Court said there is no harmless error analysis. It doesn't matter. This is a denial of a due process right to have your defense presented. So it doesn't matter whether it's judge or jury. Now, if it was a judge-determining verdict, then yes, of course. But here, my client was denied the right to present his defense and had that lower mental state proven beyond a reasonable doubt. And the effect of that is that now we must treat his verdict as felony murder only. And the result of that verdict is significantly lower sentencing consequences, which is he was not eligible for the death penalty and not eligible for a natural life sentence. Counsel, thank you. The matter will be taken under advisement.